# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**PATRICK C. PARKER (#385992)**                    **CIVIL ACTION**

**VERSUS**

**BOBBY WEBBER, ET AL.**                    **NO. 11-0082-JJB-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 20, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**PATRICK C. PARKER (#385992)**                                    **CIVIL ACTION**

**VERSUS**

**BOBBY WEBBER, ET AL.**                                    **NO. 11-0082-JJB-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motions for Summary Judgment (Rec. Docs. 93, 94 and 95).  These Motions are opposed.

The *pro se* plaintiff, an inmate previously confined at the Ascension Parish Jail ("APJ"), Donaldsonville, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against former Warden Bobby Webre (identified as "Bobby Webber" in the Complaint), Correctional Officer Timothy Maxwell, Sheriff Jeffery Wiley, Nurse Michelle Gaudin, Nurse Rhonda Shear and Dr. Steven L. Holmes, complaining that the defendants violated his constitutional rights by maintaining him in segregated confinement for more than two years, during which time he had insufficient access to the law library and an insufficient opportunity for recreation or telephone usage.  In addition, the plaintiff complained, *inter alia*, that the defendants have subjected him to excessive force, interfered with his incoming and outgoing mail, denied him appropriate medical attention, and denied him due process and equal protection.

The defendants move for summary judgment, relying upon the pleadings, Statements of Uncontested Material Facts, copies of the plaintiff's medical records and administrative grievances at the Ascension Parish Jail, and the affidavits of defendants Timothy Maxwell, Bobby Webre, Dr. Steven L. Holmes, and Nurse Michelle Gaudin.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, filed on or about February 14, 2011, the plaintiff alleged, relative to defendants Wiley, Webre and Maxwell, that he was a pretrial detainee at APJ and had been maintained in segregated confinement for a period of approximately two (2) years without a disciplinary write-up and without any pre-deprivation or post-deprivation hearings.  Specifically, he asserted that he was originally placed in administrative segregation in February, 2009, and was told at that time by defendant Maxwell that the confinement would only last for two or three months while the plaintiff's dormitory was being renovated.  Notwithstanding, the plaintiff asserts that he was allegedly maintained in a single-man cell for approximately 1½ years thereafter, was then moved to a four-person cell which he occupied alone for approximately three months, was then moved to a one-person cell (with two beds) which he occupied alone for another three months, and was finally moved to a two-person cell which he was occupying alone at the time of filing of the Complaint, all without any appearance before a prison disciplinary board or review board.  The plaintiff further asserted that although he was allowed out of his cell for an hour every day to walk around for exercise, he was rarely allowed to go outdoors.  He further alleged that when he was placed in the four-person cell, he was told by a prison official ("Warden Knighten," not named as a defendant herein) that he could no longer utilize the telephone or go to the APJ law library.  The plaintiff further alleged that defendants Webre and Maxwell engaged in stopping his outgoing mail and in destroying and failing to deliver his incoming mail, and that this conduct caused him prejudice in connection with the defense of his then-pending criminal case.  Finally, the plaintiff alleged that the defendants improperly placed him in a cell with a co-inmate informer in 2004 "to gather information" about the plaintiff's

criminal case, and that defendant Maxwell subjected him to excessive force in September, 2009 and October, 2010.[1]

In addition to the foregoing, the plaintiff also asserted a claim relative to alleged inadequate medical care provided to him by defendants Dr. Stephen Holmes and Nurses Rhonda Shear and Michelle Gaudin at APJ.  Relative to these defendants, the plaintiff asserted that when he first arrived at the Jail in 2004, he was suffering the effects of a recent gun shot wound to his abdomen and two recent major surgeries.  In addition, he alleged that he had suffered a previous gun shot wound to his neck.  According to the plaintiff, these injuries thereafter resulted in continuing pain and in neck and stomach problems.  Without any factual detail, the plaintiff alleged that during his ensuing confinement at APJ, he had been "complaining about my serious medical conditions but these people still won't send me to have test ran on my neck for dehydration also for my stomach problems I've been having."  He further asserted that the defendant medical providers were failing to send him to the hospital, in part because defendant Maxwell had instructed them not to.

Initially, the Court notes that it is unclear from the plaintiff's Complaint whether he has named the defendants in their individual and/or their official capacities.  However, in light of the liberality with which this Court interprets the pleadings of *pro se* litigants, *Haines v. Kerner*, 404 U.S. 519 (1972), the Court interprets the plaintiff's Complaint as naming the defendants in both capacities. Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities because these officials are not seen to be "persons" under § 1983.  *Will v. Michigan*

---

1.  Although the plaintiff's Complaint does not provide the Court with the dates of the alleged excessive force incidents by defendant Maxwell, the Court has determined the pertinent dates from other documents filed into the record of this proceeding.

*Department of State Police*, 491 U.S. 58, 64 (1989).  Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.  *Id.* at 25.  Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal.  In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state.  *Id.*

In addition to the foregoing, the plaintiff's claim for prospective injunctive relief asserted against the defendants in their official capacities would not be prohibited under the Eleventh Amendment because such a claim is also not treated as a claim against the state.  *Will v. Michigan Department of State Police, supra*, 491 U.S. at 71.  *See also* 15 *Am. Jur. 2d Civil Rights* § 101.  Notwithstanding, inasmuch as the plaintiff has since been released from confinement at APJ and is no longer subject to the alleged wrongful conduct of the defendants at that facility, his claim for prospective injunctive relief has been rendered moot by such transfer and is no longer properly before the Court.  *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (recognizing that an inmate's transfer from an offending institution normally "render[s] ... claims for declaratory and injunctive relief moot").  This aspect of the plaintiff's lawsuit, therefore, is subject to dismissal.

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the Court first notes that the plaintiff's claims arise under the Due Process Clause of

the Fourteenth Amendment to the United States Constitution instead of under the Eighth Amendment's prohibition against cruel and unusual punishment.  The Due Process Clause protects a pretrial detainee's right to be free from punishment prior to an adjudication of guilt.  *See Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979).  The appropriate standard to apply in analyzing a constitutional challenge by a pretrial detainee depends upon whether the challenge is seen to be an attack upon a condition of confinement or a complaint about one or more episodic acts or omissions.  *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996).  A conditions-of-confinement case is a constitutional attack on the "general conditions, practices, rules, or restrictions of pretrial confinement."  *Id.*  In such a case, the harm is caused by the condition or policy itself, and this is true, for example, where inadequate medical care, *as a whole*, results in intolerable conditions of confinement.  *Cf.*, *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).  In contrast to the foregoing, if a pretrial detainee is complaining about one or more particular acts or omissions by prison officials, the claim is characterized as an "episodic act or omission" case.  *Id.*  An episodic case is presented when the decision of an independent actor, such as a doctor, nurse, or security officer, is interposed between the detainee and the policy or practice of the local governmental entity that permitted the harm.  *Hare v. City of Corinth, supra*, 74 F.3d at 643.  In an episodic act or omission case, the detainee must establish that the official had actual, subjective knowledge of a substantial risk of serious harm but responded with deliberate indifference to the known or perceived risk.  *Id.*  The deliberate indifference standard is notably the same standard that is applicable in the Eighth Amendment context.  *Id.* at 643-44.

Addressing first the plaintiff's claim asserted against the medical defendants (Dr. Stephen Holmes and Nurses Michelle Gaudin and Rhonda Shear), this claim may be categorized as an assertion that these defendants failed to attend to his serious medical needs through an alleged failure to respond appropriately to his medical complaints.  In this context, the violation of a

detainee's interest in bodily integrity, through the denial of a basic human need such as reasonable medical care, can amount to punishment under the Due Process Clause.  *Partridge v. Two Unknown Police Officers of the City of Houston*, 791 F.2d 1182, 1187 (5th Cir. 1986).  In the instant case, inasmuch as the plaintiff is complaining about the alleged wrongful conduct of the specific medical defendants and not about inadequate medical care at APJ as a whole, this claim should be analyzed under the standard that is applicable to episodic claims.  *See, e.g., Brown v. Bolin*, 500 Fed. Appx. 309, 313 (5th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 2833 (2013) (finding that the plaintiff's claim of inadequate medical care presented an "episodic" claim because there was no evidence of a history of systemic failures in the provision of medical care at the facility).  Moreover, the plaintiff has made no claim and presented no evidence suggesting that the actions of the specific health care providers at APJ in this case were the result of official APJ policy.  Accordingly, the deliberate indifference standard is the appropriate standard for review of this claim.[2]

Under the deliberate indifference standard, a claimant must allege and show that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).  Whether the plaintiff received the treatment or accommodation which he believes he should have is not the issue.  *Estelle v. Gamble, supra*.  Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate

---

2.  In any event, the courts have concluded, in medical cases, that the deliberate indifference standard applicable to episodic claims is "functionally equivalent" to the reasonable relationship standard applicable to conditions-of-confinement claims.  *See Scott v. Moore, supra*, 114 F.3d at 54 (*citing Hare v. City of Corinth, supra*, 74 F.3d at 646).

indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994).

As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard

sets a very high bar: the plaintiff must establish that the defendant "refused to treat him, ignored

his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that

would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept.

of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*.

Further, a mere delay in treatment does not amount to a constitutional violation without both

deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195

(5th Cir. 1993).

From a review of the competent evidence in the record, it is clear that the plaintiff will be

unable to establish that the defendants were deliberately indifferent to his serious medical needs

during the time period pertinent to this claim.[3] To the contrary, it appears that the plaintiff was

---

3. For the most part, the plaintiff's claim relative to medical treatment occurring more
than one year prior to the filing of his Complaint in February, 2011, is barred by the applicable
limitations period. In this regard, inasmuch as there is no federal statute of limitations for claims
brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general
personal injury limitations period for such claims. *Owens v. Okure*, 488 U.S. 235, 249-50
(1989). In Louisiana, the applicable period of limitations is one year. La. Civ. Code Art. 3492.
Further, although the limitations defense is an affirmative defense which usually must be raised by
the defendants, "the district court may raise the defense *sua sponte* in an action under 28
U.S.C. § 1915." *Pittman v. Conerly*, 405 Fed. Appx. 916, 917 (5th Cir. 2010). Accordingly,
even though the defense has not been asserted by the defendants, the Court may itself raise the
issue, and it appears that the plaintiff's claim regarding medical treatment occurring prior to
February, 2010, is not properly before the Court. The continuing tort theory would not benefit
the plaintiff in this context because it has been found that, with claims of episodic deliberate
medical indifference, "each instance of potentially deliberate indifference cease[s] when [the
plaintiff] receive[s] medical attention." *Nottingham v. Richardson*, 499 Fed. Appx. 368, 375 (5th
Cir. 2012). Further, whereas the pendency of properly filed administrative grievance
proceedings would toll the limitations period, *see Harris v. Hegmann*, 198 F.3d 153, 160 (5th Cir.
1999), and whereas such tolling, in this case, may be seen to extend the pertinent period

provided with a substantial amount of medical attention in response to his many complaints at APJ, including medication, diagnostic testing, and referrals for consultations with outside specialists.  The plaintiff's various pleadings and medical records reflect that during the month prior to his arrival at APJ in May, 2004, he suffered a gun shot wound to his lower abdomen which damaged his intestines and resulted in bullet fragments lodged in his pelvis.  As a result of that injury, he had undergone two recent surgeries "due to obstruction around his intestines."  In addition, he alleges that he had suffered a bullet wound to his neck in 1999 which had damaged his vocal cords and which caused him continuing pain.  He was then booked into APJ on May 28, 2004, and he alleges that he experienced ongoing health problems thereafter, involving *inter alia* his stomach, neck, back and lungs.  However, although he complains that he was not provided with attention by qualified medical providers, his medical records reflect instead that his complaints were addressed on numerous occasions by nurses and by the contract physician employed to provide medical care at APJ.  These providers made independent evaluations and assessments regarding the plaintiff's medical needs and provided treatment and medication for his complaints.  When the plaintiff made sick call requests, he was routinely evaluated by the defendant nurses employed at the facility and, upon assessment, the nurses provided medical care and, on multiple occasions, referred the plaintiff for evaluation by the contract physician, defendant Dr. Holmes, who provided services at APJ between 2006 and December, 2010.  The defendant physician then prescribed medications, ordered diagnostic testing and, on several occasions, referred the plaintiff to outside specialists for evaluation and treatment.  *See* Rec. Doc. 94-3.  For example, the defendant physician saw and examined the plaintiff for the first time on July 19, 2006, and saw him thereafter on August 1, 2007, October 3, 2007, June 11, 2008,

---

applicable to the plaintiff's claim to some extent, the Court finds, as discussed herein, that there is no showing of deliberate medical indifference in any event.

February 25, 2009, June 2, 2010, July 14, 2010, August 4, 2010, October 26, 2010, and December 1, 2010. *Id.* The defendant ordered diagnostic x-rays for the plaintiff in August, 2006 (interpreted as reflecting "no change" since the plaintiff's 2004 surgery), August, 2007 (for an unrelated hand fracture), June, 2008 (for a history of chest pain, interpreted as "normal"), May, 2010 (for a history of "pelvic pain," interpreted as "unremarkable"), and in December, 2010 (for a history of "generalized pain," interpreted as reflecting "no acute findings" and "little change" from films taken in 2008). Blood tests were ordered by defendant Dr. Holmes and were undertaken in June, 2008, March, 2009, June, 2010, July, 2010, and December, 2010. The plaintiff was apparently seen at Earl K. Long Hospital in Baton Rouge, Louisiana, for a fractured hand in July, 2007, and was referred by Dr. Holmes for dental treatment in June, 2010, and for evaluation by a gastroenterologist, also in June, 2010. In short, it appears that the plaintiff's medical condition and complaints were not ignored at APJ, that he received substantial medical treatment in response to his complaints, and that his principal complaint in this case is one of mere disagreement with the medical opinion of health care providers at APJ and with alleged delays in providing attention.[4] As noted above, however, the plaintiff was not entitled to the medical care that he believed he should have, and the mere alleged delays in treatment, which this Court does not perceive to have been excessive in any event, are not legally actionable in the absence of a showing of both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh, supra*, 989 F.2d at 195. In the absence of any showing relative to these requirements, the plaintiff's claim asserted against the defendants relative to his medical care at

---

4. Much of the documentation submitted by the plaintiff in opposition to the defendants' motions relates to medical complaints which he made *after* the date of filing of the original Complaint in February, 2011. This Court, however, is principally concerned with the medical care which the plaintiff received prior to that date. Notwithstanding, it does not appear in any event, from a review of the plaintiff's medical records, that his medical needs were ignored either before or after the filing of the Complaint in this case.

APJ must fail, and the defendants are entitled to summary judgment as a matter of law in connection with this claim.[5]

Turning to the plaintiff's claims asserted against the remaining defendants, it first appears that the plaintiff has failed to allege sufficient personal participation by the defendant Sheriff, Jeffrey Wiley, in any violation of the plaintiff's constitutional rights.  In this regard, pursuant to well-settled legal principles, in order for a state or parish official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed.  *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).  Any allegation that the defendant Sheriff is responsible for the actions of subordinate officers or co-employees, under a theory of vicarious responsibility or *respondeat superior*, is alone insufficient to state a claim under § 1983.  *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676

---

5.  In his Complaint, the plaintiff also made a conclusory reference to a request for relief under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.  *See* Complaint, Rec. Doc. 10 at p. 13.  The ADA prohibits discrimination against qualified individuals with disabilities and the exclusion of qualified individuals with disabilities from services, programs or activities.  To establish a claim under this statute, the plaintiff must show that he is a qualified individual under the Act, that he has been excluded from participation in or been denied the benefit of services, programs, or activities for which the defendants are responsible (or that he has otherwise been discriminated against by the defendants), and that the exclusion, denial of benefits or discrimination was *by reason of the disability*.  *See* 42 U.S.C. § 12132; *Nottingham v. Richardson*, *supra*, 499 Fed. Appx. at 376.  In the instant case, the plaintiff has failed to provide factual allegations which suggest that the defendants' actions in allegedly failing to provide him with appropriate medical treatment amounted to discrimination based on any disability.  In *Nottingham, supra,* the Fifth Circuit rejected the claim of a prisoner under the ADA, concluding that even if the plaintiff was a qualified disabled individual under the Act, "he must still show that he was discriminated against based on that disability."  *Id.* at 377.  The Court further concluded that there was no basis for a finding that the alleged misconduct in that case was based on the plaintiff's disability, and the Court also made clear that "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"  *Id.* (Citation omitted).  In the instant case, similarly, the Court finds that the plaintiff has failed to allege that the defendants have discriminated against him because of an alleged disability, and his claim asserted under the ADA must therefore be dismissed.

(2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that prison officials "may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights has occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law.  *Lozano v. Smith, supra*, 718 F.2d at 768.

Applying this standard in connection with the plaintiff's claim asserted against defendant Wiley, the Court concludes that the defendant's motion is well-founded.  Other than in the Caption of the Complaint, the plaintiff makes little mention of this defendant and makes no factual assertion whatever that this defendant had any involvement in the plaintiff's housing assignments or medical care at APJ.  As Sheriff of Ascension Parish, it is clear that this defendant stands principally in a supervisory role with regard to the operation of the prison, its medical department and its personnel.  Nor has the plaintiff adequately pleaded the existence of any affirmative wrongful policy at APJ which has resulted in a denial of the plaintiff's constitutional rights.  Accordingly, the plaintiff's claim asserted against defendant Sheriff Wiley fails to rise to the level of a constitutional violation, and this defendant is entitled to judgment as a matter of law.

Turning to the plaintiff's claims asserted against former APJ Warden Bobby Webre and Security Officer Timothy Maxwell, the Court first notes that the plaintiff has made reference to an incident occurring in 2004 or 2005, when he was placed in a cell with a co-inmate as part of an alleged conspiracy by these defendants to obtain inculpatory information relative to the plaintiff's criminal prosecution.  This claim is clearly time-barred.  *See* note 3, *supra.*

Accordingly, the plaintiff's claim relative to this alleged incident should be dismissed for this reason.

The plaintiff next refers to two incidents of alleged excessive force, the first occurring on September 21, 2009, when defendant Maxwell allegedly employed a taser to obtain compliance when the plaintiff was kicking the door of his cell and refusing repeated orders to cease the disturbance and to present his hands for placement in restraints, and the second occurring on October 5, 2010, when defendant Maxwell allegedly employed irritant spray against a co-inmate housed on the plaintiff's tier.  With regard to the first such incident, this claim occurred more than one year prior to the filing of the Complaint in this case and so appears to be time-barred.  Further, upon a review of the voluminous documentation filed in this case, the Court has not discovered any administrative proceedings filed by the plaintiff relative to that claim which would have tolled the limitations period for a sufficient period to bring the claim within the one-year limitations period.  Notwithstanding, the Court will evaluate both claims of excessive force under the applicable constitutional standard.

A use of force is excessive and violates the United States Constitution only if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  This is the standard which applies to claims of excessive force asserted by both pretrial detainees and convicted inmates.  *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993).  Although the Supreme Court has held that the constitutional prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force (provided that such force is not of a sort "repugnant to the conscience of mankind"),  *Hudson v. McMillian*, *supra*, 503 U.S. at 10, a prisoner who is subjected to gratuitous force by prison officials "does not lose his ability to

pursue an excessive force claim merely because he has the good fortune to escape without

serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38.   Factors to be considered in

determining whether an alleged use of force has been excessive include the extent of injury

sustained, if any, the need for the application of force, the relationship between the need for

force and the amount of force utilized, the threat reasonably perceived by prison officials, and

any efforts made to temper the severity of a forceful response.  *Hudson v. McMillian, supra*, 503

U.S. at 7.

Applying this standard in the instant case, the Court finds that the plaintiff has not come

forward with evidence sufficient to create a genuine issue of disputed fact relative to defendant

Maxwell's assertion that the referenced use of force in September, 2009, case was justified by

the plaintiff's conduct and was not for the specific purpose of causing the plaintiff injury.

Defendant Maxwell asserts in a sworn affidavit that, with regard to that incident, the plaintiff had

flooded his cell, was causing a disturbance, and was refusing repeated orders to present his hands

for the application of restraints.  *See* Rec. Doc. 93-3.  According to defendant Maxwell, the

plaintiff was warned that a taser would be utilized if the plaintiff failed to comply, and the

defendant then utilized force on that date only when the plaintiff "continued to fail to comply."

The plaintiff does not directly refute these sworn assertions and, in fact, alleged in his Complaint

only that defendant Maxwell "didn't do the paper work thats supposed to be done when you use

a taizer [sic] or mace."  *See* Complaint, Rec. Doc. 10 at p. 9.  Notwithstanding, it is clear that an

application of force may be justified by an inmate's failure to comply with orders by security

officers to cease a disturbance and to allow himself to be restrained.  *See, e.g., Calhoun v. Wyatt*,

2013 WL 1882367, *7 (E.D. Tex. May 2, 2013) ("[t]he law in effect in ... 2009 allowed officers

to use force in a good faith effort to restore discipline, and permitted the use of pepper spray on

prisoners who were resisting or refusing to comply with orders"); *Schneider v. Kaelin*, 2013 WL

1867611, *5 (S.D. Tex. April 21, 2013) (noting that "[t]he Fifth Circuit has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders").  It is also clear in this case that the plaintiff was seen by medical personnel after the brief application of force, *see* Rec. Doc. 95-15 at p. 12, and he does not allege that the application of force caused any injuries of note.  Accordingly, the Court finds that the plaintiff has failed to make a showing sufficient to defeat the defendant's Motion for Summary relative to this claim.

Further, with regard to the alleged incident of October, 2010, the plaintiff concedes that the chemical spray utilized on that occasion was directed, not at himself, but instead at another inmate housed on the unit, and documentation which the plaintiff submitted to prison officials at that time suggest that he was exposed to the indirect effects of the chemical irritant for no more than a brief period of time and was moved to another housing unit thereafter.  *See* Rec. Doc. 19-3 at p. 7; Rec. Doc. 106-2 at p. 14.  Accordingly, in the absence of any showing by the plaintiff that the actions of defendant Maxwell on either date was for the sole purpose of causing the plaintiff harm, was excessive to the need presented, or resulted in injuries that were of significance or were not attended to by medical personnel, the Court is unable to conclude that the plaintiff has shown any possibility of relief in connection with this claim.

The plaintiff also contends that the defendants wrongly placed him in segregated confinement at APJ in 2009 and thereafter maintained him in segregated confinement for a period in excess of two (2) years, all without any appearance before a disciplinary board or before periodic review boards.  In this regard, as previously noted, in considering whether a condition of confinement imposed upon a pretrial detainee has resulted in a deprivation of liberty without due process of law, the inquiry focuses on whether the condition or restriction was punitive.  *Bell v. Wolfish, supra*, 441 U.S. at 535.  Whereas an arbitrary or purposeless restriction

on a pretrial detainee may lead to an inference that a restriction is punitive, *see Olgin v. Darnell*, 664 F.2d 107, 109 (5th Cir. 1981), it is also true that "the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inferences that such restrictions are intended as punishment." *Id.* In the instant case, the plaintiff asserts that he was initially placed in segregated confinement in 2009 and was told at that time that the detention was temporary and was because of modifications being undertaken at APJ. In contrast, according to the affidavit of defendant Webre, the plaintiff was placed in segregated confinement on April 21, 2009, when he was discovered fighting with another inmate. *See* Rec. Doc. 93-4. Defendant Webre further states that the plaintiff's placement in segregated confinement has been justified because the plaintiff "has had a history of violence, noncompliance with orders of jail officials, and belligerence towards jail officials, which have resulted in numerous instances of disciplinary actions being taken against him." *See id.* This assertion is borne out by documentation filed into the record which reflects that the plaintiff was involved in fighting with other prisoners on numerous occasions, as well as in flooding his cell, *see* Rec. Doc. 19-9. The plaintiff does not dispute that the referenced fighting incidents occurred but, instead, focuses on his assertion that he was not the aggressor in these incidents. *See* Complaint, Rec. Doc. 10 at pp. 9-10. Accordingly, there is ample evidence in the record to support the determination by prison officials to maintain the plaintiff in a more restrictive environment, and the plaintiff has presented no countervailing evidence suggesting that his custody status was intended to be punitive. *See Serton v. Sollie*, 2003 WL 22849840, *3 (5th Cir. Dec. 2, 2003) (upholding dismissal of detainee's claim regarding alleged placement in 23-hour administrative lockdown without pre-deprivation notice or hearing where the evidence reflected that such placement was "for his own protection and for the protection of other inmates," where the plaintiff failed to

show that the defendants "acted with subjective deliberate indifference to [h]is right to due

process," and where the plaintiff's "conclusional statements and suppositions" were not

sufficient to show the existence of a genuine issue of disputed fact).  In addition, the plaintiff has

made no showing that the conditions which he faced in segregated confinement at APJ were

significantly atypical to those faced by prisoners confined in other areas of the prison, so as to

implicate his entitlement to due process protections.  *See Rhine v. City of Mansfield*, 499 Fed.

Appx. 334, (5th Cir. 2012) (upholding dismissal, as frivolous, of a detainee's claim regarding

placement in administrative segregation without due process, where the plaintiff failed to show

that the conditions imposed "atypical and significant hardship[s]" in relation to the ordinary

incidents of prison life).  The Court in *Rhine* noted that this test applied to both pretrial detainees

and convicted inmates and specifically cited the case of *Hernandez v. Velasquez*, 522 F.3d 556

(5th Cir. 2008), which reiterated that prison officials are accorded the "widest possible deference'

in classifying prisoners so as to "maintain security and preserve internal order," and "absent

extraordinary circumstances, administrative segregation as such, being an incident to the

ordinary life as a prisoner, will never be a ground for a constitutional claim."  *Id.* at 562.  In the

instant case, the plaintiff has not shown that segregated confinement at APJ imposed an "atypical

and significant hardship" upon him sufficient to implicate his right to due process.  *Cf.,*

*Frischenmeyer, v. Boone*, 85 F.3d 621 (5th Cir. 1996) (reversing the dismissal of a detainee's due

process claim as frivolous where the detainee complained of confinement in a "detox" tank,

"sleeping on the floor in leg irons, handcuffs, belly chain, and drag chain").  In the absence of

such a showing, this claim is subject to dismissal as being without foundation.

     Finally, the plaintiff complains of deprivations that he allegedly suffered while confined

at APJ, including limitations upon his access to legal materials and an adequate law library,

interference with his incoming and outgoing mail, and limitations upon his ability to exercise, utilize the telephones, and enjoy visitation.

First, with regard to the plaintiff's complaint regarding alleged limitations placed upon his access to legal materials, legal assistance, and an adequate law library, this claim is essentially that the defendants interfered with his access to the courts, and the plaintiff seeks thereby to invoke the provisions of the First Amendment to the United States Constitution. Under this Amendment, "the fundamental constitutional right of access to the courts requires that prison authorities assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This right extends to pretrial detainees as well as to convicted inmates. *Boyd v. Nowack*, 2010 WL 892995, *2 (E.D. La. March 11, 2010), *citing United States v. Moya-Gomez*, 860 F.2d 706, 743 (7th Cir. 1988). This right is not absolute, however, and where an inmate or pretrial detainee is represented by retained or appointed counsel, he does not have an independent right to unlimited access to the prison law library. *See Caraballo v. Federal Bureau of Prisons*, 124 Fed. Appx. 284, 285 (5th Cir. 2005) ("Because Caraballo had court-appointed counsel ... he had no constitutional right of access to a law library in preparing his defense"); *Buckenburger v. Strain*, 2006 WL 4503353, *3 (E.D. La. Oct. 20, 2006) ("The appointment of ... counsel satisfies the detainee's right of access to courts for his criminal proceedings; in those circumstances, he is not additionally entitled to independent access to a law library and legal materials"). Accordingly, because the plaintiff was provided with legal representation in connection with his pending criminal charges, "he had no constitutional right of access to a law library in preparing his defense." *Caraballo v. Federal Bureau of Prisons, supra*, 124 Fed. Appx. at 286. In addition, in order for the plaintiff to state a violation of his constitutional right to meaningful access to the courts, he must allege and show

that he has suffered some cognizable legal prejudice or detriment as a result of the challenged conduct.  *See Johnson v. Epps*, 479 Fed. Appx. 583, 593 (5th Cir. 2012), *citing Lewis v. Casey*, 518 U.S. 343, 351 (1996).  In the instant case, the plaintiff has failed to assert in what way he has sustained actual prejudice in this or any other proceeding, and the Court notes that the plaintiff has successfully filed numerous pleadings in this case.  "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense" *Lewis v. Casey, supra*, 518 U.S. at 351.  Accordingly, the Court finds that the plaintiff has failed to show a deprivation of his First Amendment right to meaningful access to the courts, and this claim should be dismissed.

In addition to the foregoing, the plaintiff also alleges that the defendants interfered with his incoming and outgoing mail at APJ, both by stopping the delivery and receipt of his mail and by reviewing privileged correspondence outside of his presence.  The United States Court of Appeals for the Fifth Circuit has recognized in this context that a prison official's interference with a prisoner's mail may violate the prisoner's First Amendment right to free speech as well as his Sixth Amendment right of access to the courts.  *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).  The plaintiff's assertions in this regard, however, are entirely conclusory, and he fails to identify any specific item of mail which was not delivered to him or which was not placed in the mail for delivery to its intended recipient.  In contrast, the mail records introduced by the defendants reflect that the plaintiff routinely received and posted mail, both during the year preceding the filing of this lawsuit and prior thereto.  *See* Rec. Docs. 19-10 to 19-13.  Moreover, the Fifth Circuit has concluded that the mere opening and inspection of a prisoner's mail, even if it occurs outside of the prisoner's presence and even if it is in violation of prison regulations, does not provide a basis for relief under § 1983.  *Id.* at 825 (dismissing inmates' claim where there was no "cognizable constitutional claim either for a denial of access to the courts or for a

denial of their right to free speech by alleging that their incoming legal mail was opened and inspected"). *See also Singletary v. Stalder*, 273 F.3d 1108 (5th Cir. 2001) (recognizing that prisoners do not have a constitutional right to be present when either privileged legal mail or non-privileged mail is opened and inspected). Further, as with a First Amendment claim, an inmate must support a Sixth Amendment claims with an allegation that he has suffered some cognizable legal prejudice as a result of the alleged wrongful conduct. *Lewis v. Casey, supra*. Having failed to allege that he suffered any prejudice whatever as a result of the isolated instances of which he complains, the plaintiff's claim arising from the alleged interference with his mail is without merit. Accordingly, this claim is subject to dismissal as well.

The plaintiff also complains of a lack of exercise while housed in segregated confinement at APJ. Specifically, whereas he acknowledges that he was allowed out of his cell for an hour per day, he complains that he was rarely allowed to go outdoors, and he asserts that he was required to wear shackles whenever he was out of his cell. In this context, the courts of this and other Circuits have held that a reasonable opportunity for exercise is a basic human need which may not arbitrarily be revoked, *see, e.g., Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.), *modified*, 688 F.2d 266 (5th Cir. 1982), and the Fifth Circuit has concluded that an extended deprivation of exercise opportunities may result in an impairment of health claim that is actionable under the Eighth Amendment, depending upon the particular facts of a given case. *See, e.g., Hewitt v. Henderson*, 271 Fed. Appx. 426, 428 (5th Cir. 2008). Neither the Fifth Circuit nor the United States Supreme Court, however, has held that prisoners enjoy an *absolute* right to out-of-cell exercise. Further, it is clear that prisoners have no protected liberty interest in any specific recreational opportunities, and a "[d]eprivation of exercise is not a *per se* constitutional violation." *Kron v. LeBlanc*, 2012 WL 4563957, *21 (E.D. La. Oct. 1, 2012), *Magistrate Judge's Recommendation approved*, 2013 WL 823550, *6-7 (E.D. La. March 6, 2013).

Applying the foregoing standard, the Court concludes that the plaintiff is unable to make a showing of deliberate indifference in this context.  In *Hernandez v. Velasquez*, *supra*, 522 F.3d at 560-61, the Fifth Circuit upheld the grant of summary judgment to defendants who maintained a prisoner in segregated confinement for thirteen months without affording him any opportunity for exercise outside of his cell.  Similarly, the Fifth Circuit in *Haralson v. Campuzano*, 356 Fed. Appx. 692, 697 (5th Cir. 2009), upheld a grant of summary judgment in favor of prison officials who had confined an inmate in a cell in the prison infirmary for seven months without any opportunity for out-of-cell exercise.  In the instant case, in contrast, the plaintiff was admittedly allowed out of his cell to walk around on a daily basis, and he does not allege that he suffered any adverse effects from a lack of exercise for the period of which he complains.  Accordingly, the Court concludes, as in *Hernandez*, that there is no genuine issue of fact in this case as to whether the defendants violated the plaintiff's constitutional rights in this context.  Inasmuch as the plaintiff was admittedly allowed to exercise outside of his cell on a daily basis, inasmuch as the Fifth Circuit, in any event, has found neither a constitutional entitlement to outside exercise nor a constitutional violation where the disallowance of exercise, as here, has not posed a substantial risk of serious harm or resulted in any serious medical need, there is nothing in the record to establish that the defendants were deliberately indifferent.  The defendants' motions for summary judgment, therefore, should be granted with respect to this issue.

Finally, the plaintiff also asserts that his constitutional right to equal protection has been violated as a result of the defendants' actions.  In this regard, the Equal Protection Clause of the Fourteenth Amendment requires essentially that all persons similarly situated be treated alike. *See Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996).  In order to successfully plead an equal protection claim, an inmate plaintiff must allege and show that he is a member of a specific group and that prison officials have acted with a discriminatory purpose because of such

membership. A discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001), *quoting Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988). An inmate cannot base an equal protection claim solely on a personal belief that he has been a victim of discrimination. *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995). Specifically, vague and conclusory allegations are insufficient to support an equal protection claim. *See Pedraza v. Meyer*, 919 F.2d 317, 318 n. 1 (5th Cir. 1990). In the instant case, all that the plaintiff has provided is vague and conclusory allegations that other prisoners confined at APJ were treated differently than was he. This unsupported assertion is not a sufficient foundation upon which to base a claim that prison officials intentionally singled out the plaintiff, as a member of a particular group, for disparate treatment or that the plaintiff is even a member of such a group. Accordingly, this claim does not rise to the level of a constitutional violation and must be dismissed.[6]

  To the extent that the plaintiff seeks to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction over state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, considering

---

  6. In a similar vein, the plaintiff makes vague and conclusory allegations regarding the retaliatory motive of prison officials. *See, e.g.*, Rec. Doc. 10 at p. 13 (wherein he alleges, "I have been being retaliated on"). He fails, however, to provide any direct evidence of retaliation or a chronology of events from which retaliation may plausibly be inferred. Accordingly, inasmuch as "mere conclusory allegations of retaliation will not suffice," *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), this claim should be dismissed as well.

the allegations of the plaintiff's Complaint and the recommendation of the Court that all of the plaintiff's federal claims be dismissed, the Court recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the defendants' Motions for Summary Judgment (Rec. Docs. 93, 94 and 95) be granted, dismissing the plaintiff's claims asserted against the defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on February 20, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**